**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| LEASE AMERICA.ORG, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROWE INTERNATIONAL CORPORATION; )<br>AMI ENTERTAINMENT NETWORK, INC.; )<br>AMUSEMENT AND MUSIC OPERATORS )<br>ASSOCIATION, INC.; DOE DEFENDANTS )<br>1-10, )<br>)<br>Defendants. )<br>) | **CIVIL ACTION**<br>**No. 13-40015-TSH** |

**MEMORANDUM OF DECISION**
**March 31, 2015**

HILLMAN, D.J.

### Background

The Plaintiff Lease America Org. Inc. ("Lease America") sells electronic juke boxes. Defendants Rowe International Corporation ("Rowe") and AMI Entertainment Network, Inc. ("AMI") manufacture jukeboxes. Defendant Amusement and Music Operators Association, Inc. ("AMOA") is a trade group that represents the interests of jukebox operators. Lease America has filed an Amended Complaint (Docket No. 52) against the Defendants in which it alleges claims for violation of the Sherman Act, 15. U.S.C. §1 (Count One), and Chapter 93A (Count Two).

This Memorandum of Decision addresses AMI Defendants' motion to Transfer Venue and Conditional Request For Limited Discovery And Evidentiary Hearing (Docket No. 57) and Defendants' Joint Motion To Dismiss The First Amended Complaint (Docket No. 59). For the

reasons set forth below, the motion to transfer is *allowed*. The Court declines to address the motion to dismiss.

### **The Motion To Transfer**

AMIC and Rowe have filed a motion to transfer this case to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a) based on a forum selection clause contained in the Master Operator Agreement between the parties. *See Declaration Of John Margold* ("*Margold Decl.*"), attached to the *Mem. In Sup. Of AMI Defs' Mot To Transfer Venue And Cond'l Request For Limited Disc. And Evid. Hearing* (Docket No. 58)("*AMI/Rowe Mem.*"), at *Ex. 2* ("Master Agreement"). Lease America, on the other hand, argues that no valid, executed forum selection clause exists. Lease American further argues that even if this Court finds there is a valid forum selection clause, for various reasons, the motion to transfer should be denied.

#### *Standard Of Review*

Where a plaintiff has contractually agreed to a specific venue by means of a forum selection clause, a court may enforce this agreement by granting a motion to transfer under 28 U.S .C. § 1404(a). *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W.Dist of Texas,* —U.S.—,—, 134 S.Ct. 568, 575 (2013). Post *Atlantic Marine,* lower federal courts' analysis of the enforceability of forum selection clauses has changed as follows: "First, the plaintiff's choice of forum 'merits no weight.' Second, the district court 'should not consider arguments about the parties' private interests.' Only public interest factors can be considered, however those factors 'will rarely defeat a transfer motion.' Third, when a plaintiff who is contractually obligated to file suit in a specific forum 'flouts' that duty, a transfer of venue under § 1404(a) 'will not carry with it the original venue's choice-of-law rules.' Accordingly, a forum-selection clause should 'be given controlling weight in all but the most exceptional circumstances. In the

vast majority of cases when a forum-selection clause is included, a § 1404(a) motion to transfer will be allowed'" *Kebb Mgmt., Inc. v. Home Depot U.S.A., Inc.*, No. CIV.A. 14-13860-NMG, 2014 WL 6454518, at *3 (D. Mass. Nov. 17, 2014)(internal citations omitted; quoting *Atlantic Marine*, --U.S.--, 134 S.Ct. 568).

" 'Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory.' 'Permissive forum selection clauses ... authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere.... In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.'" *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014)(internal citation and citation to quoted cases omitted).

<u>*Whether The Forum Selection Clause In The Master Agreement is Mandatory or Permissive*</u>

The Master Agreement contains a Choice of Law and Venue provision that provides as follows:

> This Agreement shall be construed in all respects with the laws of the State of Michigan without giving effect to the conflict of laws principles of such State. Each party hereby unconditionally and irrevocably consents to the jurisdiction and venue in the Courts of the State of Michigan and in the U.S. District Courts for the Northern District of Michigan, and irrevocably waives any objection (including any objection with respect to venue) that any party may now or hereafter have to the exclusive jurisdiction of said courts… in any matter relating to this Agreement … .

*Master Agreement*, at Section 9(e). While the first part of forum clause uses permissive language, the concluding language provides that both parties waive objection to the *exclusive* jurisdiction of the Michigan state court and the U.S. District Court of the Northern District of

3

Michigan[1]—including any objection to venue. Lease America does not argue that the clause is permissive rather than mandatory, rather it focuses the entirety of its argument on whether Master Agreement is a binding agreement between the parties, and by extension, whether the forum selection clause is enforceable. In any event, I find that the clause demonstrates the parties' intent to make Michigan's jurisdiction exclusive, and therefore, the forum selection clause contained in the Master Agreement is mandatory. I will now address whether the forum selection clause is enforceable.

*Enforceability of the Forum Selection Clause*

*Relevant Facts*

In August 2005, Plaintiff's president, Charles Pietrewicz ("Pietrewicz"), purchased approximately 11 jukeboxes from an AMI regional distributor, Beston Enterprises. It is AMI"s standard procedure to require a purchaser to agree to the Master Agreement and the AMI Network Operation Guide, *see Margold Decl.*, at *Ex 3* ("AMI Operation Guide"), before it will enable the music content on the jukeboxes and connect them to the AMI Network. The parties engaged in negotiations concerning the terms of the agreements.

Pietrewicz signed the Master Agreement on August 31, 2005 and returned the signed signature page to AMI/Rowe. Beside his signature, Pietrewicz included the notation "(with conditions)." That same date, Pietrewicz also returned to AMI/Rowe a signed signature page to

---

[1] AMI's principal place of business is Pennsylvania. AMI is the parent company of AMI Entertainment, Inc. ("AMI Entertainment"), which is the signatory to the agreement and whose principal place of business is in Grand Rapids, Michigan. To date, neither party has raised the issue of whether the fact that AMI Entertainment is not a party to this suit has any bearing on the enforceability of the forum selection clause. Since the issue has not been raised by the parties, the Court need not address it. Given that the Master Agreement and the AMI Operation Guide are assignable, at will, by AMI Entertainment, it may well be that AMI Entertainment assigned its rights to AMI and this fact is not included in the record before me.

Additionally, the forum selection clause provides that jurisdiction and venue shall lie in the U.S. District Court of the Northern District of Michigan—a court which does not exist. AMI seeks to have the case transferred to the Western District of Michigan. Neither party addresses this anomaly. Since the choice of law clause goes on to provide that the parties agree to exclusive jurisdiction and venue in the federal and state courts of the location where AMI is located, presumably the erroneous reference is immaterial.

the AMI Operation Guide, which included the same notation. *See Margold Decl.*, at *Ex 3.*[2] It is unclear from the signature pages as to what Pietrewicz meant by "with conditions," however, there is prior correspondence between the parties which is informative. On August 19, 2005, John Margold, Rowe Senior Vice President of Sales & Marketing, sent Pietrewicz a letter which stated the following:

> Dear Mr. Pietrewicz,
>
> First let me thank you for your support of Rowe International and AMI Entertainment … .
>
> I have spoken with Joe Beston, and I am aware of your concerns. Please accept this "side letter" to amend the AMI Operator Agreement that you are executing this month (August, 2005).
>
> Instead of a fax or email copy of the monthly statement, we will provide you with a "hard copy" invoice. This will either be via US Mail, a delivery service (e.g. UPS) or hand delivery by Betson of New England. We will expect to receive payment within three days via Credit Card transaction. Joe has advised you that we will add 2% to the invoice for the processing fee. Note this is not the 2% of the coin drop—jus the AMI share. So 18% becomes 18. 36%.
>
> Please complete the form included with this letter and return it to us in the enclosed envelop [sic] … .
>
>
> Regards,
>
> /s/ John Margold
> Sr. VP of Sales & Marketing
> Rowe International Corporation

*Marigold Decl.,* at *Ex. 1.*

After receiving the signed signature pages to the Master Agreement, AMI Operation Guide, and credit card authorization form executed by Pietrewicz, AMI connected the jukeboxes

---

[2] Pietrewicz signed the agreements on behalf of his company Future Video, Inc. ("Future Video"). Because it makes no difference in the analysis of the issues before the Court, I will sometimes refer to Pietrewicz rather than Future Video, with the understanding that he was acting on behalf of the company.

purchased by Pietrewicz to the AMI Network. Thereafter, AMI began invoicing Future Video and began collecting royalties in accordance with the agreed upon payment and invoicing terms. By its terms, the Master Agreement ran from the date of signature through the fifth anniversary of the date upon which the last unit set forth on appendix "A" was made accessible to, or otherwise powered by and/or connected to the "AMI Network." *Margold Decl*, at *Ex. 2*. The Master Agreement incorporates the AMI Operation Guide by reference. *Id.*

On April 11, 2008, Pietrewicz e-mailed Mike Maas ("Maas"), president and chief executive officer of AMI/Rowe, stating he wanted to memorialize their agreement on certain points which had been the subject of a recent meeting. Included was the following provision as to which he alleges the parties agreed: "Any other term or condition of any other agreement between the parties notwithstanding, AMI acknowledges and agrees that Lease America may bring any action or proceeding to enforce the terms of any agreement between the parties or for any purpose, including for injunctive relief, in the Commonwealth of Massachusetts." *See Declaration of Michael G. Maas,* attached to *AMI/Rowe Mem*, at *Ex. 3*. The other alleged points of agreement listed by Pietrewicz, included: (1) The parties will promptly provide executed copies of all agreements between them; (2) AMI will not require Lease America to accept any new agreement or modify any existing agreement as a condition to Lease America's continued access to equipment, operator accounts, etc.; (3) the AMI Operating Agreement made available in February 2008 in the form of a "click-through" electronically accessed agreement ("February 2008 Amendment") will not be binding on Lease America and the amendment of the Master Agreement referred to in that amendment will not be binding on Lease America; (4) AMI acknowledges and agrees that Lease America has purchased and taken title to each of its jukeboxes, AMI will not seek to restrict or limit Lease America's ownership or ability to use the

jukeboxes, etc.; and (5) AMI and Lease America will refrain from disparaging each other. *Id.*Pietrewicz asked Margold to execute an included signature page "to indicate agreement to each of the terms and conditions contained herein and intent to be bound thereby." *Id.*

Maas replied to Pietrewicz on July 14, 2008. After apologizing for the delay in engaging on the "click wrap issues," Maas states as follows:

> I've looked thru the various notes you've send [sic] me, which includes a draft "agreement" with lots of stuff. Frankly, in order to sign that I'd need lots of lawyer time, as would you, and I would prefer to spend a few days without lawyers for a change. [smiley face].
> So , I've instructed the team at Rowe/AMI to remove the click wrap requirement FOR YOU ONLY. This will allow you to access your machines, as you requested on the phone last week.
>
> I will grant your existing machines, and any machines you buy prior to any NEW changes which may occur (in the future) to the AMI contracts, rights to operate under the guidelines/contract that was in place just prior to the new click wrap put in place earlier this year (which caused the issue for you. *In case this is confusing, what I mean is we'll just go back to the state of thing before we did the new click wrap ….* But for lease America ONLY.
> … .
> Let me know please of this works for you.
> Thanks, Mike.

*Id.*, at *Ex. 4* (emphasis added). Later that same day, Pietrewicz responded to Maas (his reply included Maas's e-mail): "Thank you for your time and consideration on this matter it is important to You and I  I'm in agreement with this mail and will keep it in the strictest of confidence  We are on the same page Have a great Day  Charlie."    *Id.*, at *Ex.5*.

*Analysis*

Lease America asserts that the Master Agreement was never a binding agreement between the parties because Petrewicz never received a signed signature page back from the Defendant (nor has Defendant produced one in this action), because he signed it "with conditions," and because he made a counterproposal regarding the forum selection clause and therefore, it is clear that there

7

was never a meeting of the mind between the parties on this issue. AMI argues that the Master Agreement was a binding agreement between the parties regardless of whether AMI returned a signed signature page to Lease Agreement, that the record is clear as to the conditions subject to which Lease America signed the Master Agreement, and Lease America's argument concerning its counter proposal regarding the forum selection clause is disingenuous as it (the counter proposal) was made three years after the parties negotiated the Master Agreement.

A written contract signed by only one party may be binding and enforceable where the non-signing party manifests acceptance. *Haufler v.Zotos*, 446 Mass. 489, 845 N.E.2d 322 (2006). In this case, it is the *signing* party that attacks the validity of the agreement. While that may present an interesting twist on the usual manner in which such issues are presented to the Court, the outcome is the same. It is clear from the record before me that both parties manifested an acceptance to the Master Agreement and AMI Operation Guide in or about August 2005. For instance, Future Video's jukeboxes were hooked up the AMI Network at that time and Future Video was invoiced for royalties and made payments in accordance with the Master Agreement and the AMI Operation Guide. That both parties manifested and intent to be bound by the agreements is also supported by their future conduct, as more fully described below.

It appears that a few years into the parties' relationship it began to sour. In April 2008, Pietrewicz sent a letter to Maas seeking to memorialize agreements allegedly reached by the two at a meeting earlier that month, including that: (1) AMI and Rowe would provide executed copies of each agreement between the parties; (2) Lease America would not be required to accept any new agreement or modified terms as a condition to its continued full access to the "Units,"; (3) Lease America would not be bound by the "*February 2008 Amendment*," nor the *amendments* to the Master Agreement referred to therein; and (4) *any other term or condition of any other*

*agreement notwithstanding*, AMI would agree that Lease America may bring any action or proceeding to enforce the terms of any agreement between the parties or for injunctive relief in Massachusetts. Contrary to Lease America's suggestion that this letter is proof that the parties never had a meeting of the mind, the letter actually supports a finding that Pietrewicz/Future Video were operating under the Master Agreement and AMI Operation Guide previously in place between the parties. Put another way, the only reasonable reading of this letter is that Pietrewicz is requesting modifications to the existing arrangements between the parties.

Maas's response further undermines the position that Lease America takes in its opposition; Maas e-mailed Pietrewicz a few months later and stated that in order to institute Pietrewicz's proposals, they would have to get the lawyers involved.[3] He then makes a counter proposal which addresses one of Pietrewicz's primary concerns and states that it (his proposal) will apply to existing machines and any other machines bought by Future Video prior to any new modifications which may occur to the contracts and guidelines that were in place just prior to February 2008 Amendment to which Pietrewicz took issue.[4] He then clarifies this last point as follows: "*In case this is confusing, what I mean is we'll just go back to the state of things before we did the new click wrap.*" Pietrewicz then sends an e-mail in reply agreeing to Maas's suggestion. In other words, both parties expressly agreed to change one aspect of their business relationship and otherwise agreed to maintain the status quo based on their existing agreements. The only logical conclusion is that they are referring to the Master Agreement and AMI Operation Guide, as in effect before the February 2008 Amendment referred to by Pietrewicz in his April 2008 letter.

---

[3] I cannot resist the temptation to reflect upon how this confusion could have been avoided by "getting the lawyers involved."

[4] The Court has paraphrased Maas's exact language which is set forth verbatim in the fact section above.

For the reasons set forth above, I find that the forum selection clause contained in the Master Agreement is valid and binding on Lease America. Furthermore, Lease America has failed to establish that it would be unreasonable to enforce the provision—that is, extraordinary circumstances do not exist which would warrant this Court's refusing to give controlling weight to the forum selection clause.

*Whether Lease American's Chapter 93A and Sherman Act Claims Fall Outside The Scope Of The Forum Selection Clause*

"It is the language of the forum selection clause itself that determines which claims fall within its scope." *Rivera v. Ventro Medico de Turabo, Inc.*, 575 F.3d 10, 19 (1st Cir. 2009). The forum selection clause applies to any matter "relating" to the Master Agreement and the AMI Operation Guide, which is incorporated therein by reference.

> 'The term "related to" is typically defined more broadly and is not necessarily tied to the concept of a causal connection.... Courts have similarly described the term "relating to" as equivalent to the phrases "in connection with" and "associated with,' and synonymous with the phrases 'with respect to,' and 'with reference to,', and have held such phrases to be broader in scope than the term 'arising out of.'

*Huffington v. T.C. Grp., LLC*, 685 F. Supp. 2d 239, 242 (D. Mass. 2010) *aff'd*, 637 F.3d 18 (1st Cir. 2011)(citing *Coregis Ins. Co. v. Am. Health Found., Inc.,* 241 F.3d 123, 128 (2d Cir. 2001)(internal citations omitted)). Lease America alleges claims for violation of the Sherman Act the gravamen of which is that AMOA and AMI/Rowe engaged in antic-competitive behavior which resulted in a per se unlawful restraint of trade, or in the alternative, AMOA and AMI/Rowe's anti-competitive behavior constituted an unreasonable restraint on trade. Such conduct is also alleged to constitute an unfair and deceptive act or practice in violation of Chapter 93A. If these claims do not relate to the Master Agreement and/or AMI Operation Guide, that is, if they are based on independent statutory rights, then they are not controlled by the forum selection clause. Put another way, the claims are outside of the forum selection clause

if they can be maintained without reference to these agreements. As pointed out by AMI, however, it is difficult to discern how Lease America can establish its claims that AMI disconnected the jukeboxes in conspiracy with AMOA without also disproving that AMI disconnected the jukeboxes because Lease America breached its obligations under the parties' agreements. That is, resolution of Lease America's claims will necessarily rely on interpretation of the agreements. Therefore, those claims are within the broad scope of the forum selection clause.

For the reasons set forth above, Defendants motion to transfer the matter to the Western District of Michigan is allowed. The Court, therefore, will refrain from addressing the motion to dismiss the amended complaint.

## Conclusion

It is hereby Ordered that:

1. AMI Defendants' motion to Transfer Venue and Conditional Request For Limited Discovery And Evidentiary Hearing (Docket No. 57); is ***allowed***, and this matter shall be transferred to the Western District of Michigan; and

2. Ruling on the Defendants' Joint Motion To Dismiss The First Amended Complaint (Docket No. 59) shall be reserved for the transferee court.


SO ORDERED.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**